**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Cindy Jaye,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Chris Jaye,<br><br>　　　　　　Defendant. | Case No.: 2:14-cv-22-JAD-PAL<br><br>**Order Denying Plaintiff's Motions for Preliminary Injunction [Doc. 4] and Temporary Restraining Order [Doc. 11]** |

　　　　Plaintiff Cindy Jaye has brought an action against Defendant Chris Jaye alleging that Chris has induced his mother, Elaine Jaye, to leave her home in Michigan and move to Las Vegas, where she lives with Chris. Doc. 1. According to Cindy, Chris has induced Elaine, who suffers from dementia, to "sign documents and conduct financial transactions without Elaine's . . . full knowledge and consent." *Id.* at 3. Chris allegedly diverted money from The Edward and Elaine Jaye Trust, for which he is a co-trustee, and for which Cindy is a beneficiary. He has also taken out loans secured by real property owned by the trust. These transactions have allowed Chris to fuel his gambling addiction. *See id.* Chris also allegedly subjects Elaine to an abusive home environment, in which Elaine is generally confined at

home, insulted, and is not "allow[ed] to walk on the carpet with shoes on." *See id.* at 12.

Cindy alleges causes of action for conversion (Count 1), breach of trust (Count 2), self-dealing (Count 3), fraud (Count 4), elder abuse (Count 5), and extreme emotional distress (Count 6). *See id.* at 6-14. Federal jurisdiction in this case is premised upon diversity of citizenship, 28 U.S.C. § 1332, and the Court's supplemental jurisdiction, 28 U.S.C. § 1367. The federal action follows efforts to have Chris removed as a Elaine's guardian in Nevada State Court, which commenced on August 9, 2013. *See id.* at 5-6.

Cindy first moved for a temporary restraining order, Doc. 3, and a preliminary injunction, Doc. 4. She based both motions on Chris' purported attempt to sell a "family owned party store locating in Lansing, Michigan," for which Chris has already "accepted an offer to purchase," without regard to whether he has received the best possible price for the subject property. Doc. 3-1 at 2-3; 4 at 4-5. Cindy also claimed that Chris' gambling problem has resulted in depletion of the trust corpus to less than $200. *See id.* Doc. 3-1 at 3; 4 at 5.

As relief in both motions, Cindy requested an Order (1) prohibiting Chris "from authorizing any additional expenditures of trust funds, pending resolution of the issues brought before . . . [the] Court . . . (2) taking out any loans against any of the properties in interest, pending resolution of the case; (3) authorizing the sale of any of the properties in interest, pending resolution of the case; (4) in the event Defendant is able to secure a loan against any of the properties in interest prior to this Motion being granted, . . . requir[ing] the proceeds of such loan be held by a neutral third party, pending resolution of the case; and (5) in the event [Chris] is able to sell any of the properties in interest prior to this Motion being granted . . . requir[ing] the proceeds of any sale to be held by a neutral third party, pending resolution of the case." Doc. 3-1 at 3; 4 at 5.

On January 9, 2014, the Court denied Cindy's Motion for a Temporary Restraining Order. Doc. 10. In its Order, the Court quoted Cindy the plain language of Rule 65(b), which states in part, "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will

result to the movant before the adverse party can be heard in opposition." *Id.* at 65(b)(1)(A). The Court then concluded that Cindy's arguments "offer[] nothing to demonstrate that irreparable injury will result to her before Chris can be heard in opposition," and denied the motion without prejudice, "subject to re-filing a motion that satisfies Rule 65," Doc. 10 at 3.

Seventeen minutes after the Court issued its Order, Cindy moved again for a Temporary Restraining Order. Doc. 11. The new motion is identical to the first, except that it included a previously included an affidavit of service, presumably to demonstrate that the motion was made *with* notice.[1] Since the relief requested is identical and Chris has at least received notice of the filing of the Complaint and both the Preliminary Injunction and Temporary Restraining Order, the Court elects to consider both motions together. For the following reasons, it will deny both motions.

**Discussion**

The standards for granting a temporary restraining order and a preliminary injunction are the same. *See Stuhlbarg International Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Brown Jordan International, Inc. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Haw. 2002); *Tootsie Roll Industries, Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987) (applying preliminary injunction standard to temporary retraining order issued with notice).[2] In particular, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quotation omitted). It is never granted as of right. *See Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008). The Court inquires whether

---

[1] The Affidavit of Service is from a process server, who affirms that he served a copy the Summons, a Verified Petition to practice *Pro Hac Vice*, a "Motion for Temporary Restraining Order and Preliminary Injunction," as well as a "brief in support of motion for temporary restraining order and preliminary injunction" and an "order granting temporary restraining order." Doc. 11-1 at 1. These documents were served on Chris on January 6, 2013. *Id.*

[2] Otherwise, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Board of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

the movant has demonstrated (1) a likelihood of success on the merits, (2) irreparable injury, (3) that remedies available at law are inadequate, (4) that the balance of hardships justify a remedy in equity, and (5) that the public interest would not be disserved by a favorable ruling. *See id.* at 20.

### A.   **Likelihood of Success on the Merits**

To demonstrate likelihood of success on the merits, the movant must show more than the fact the Court may have jurisdiction. *See Munaf v. Green*, 553 U.S. 674, 690 (2008). The Court need not evaluate all claims included in the Complaint if it concludes that successful prosecution on at least one of the claims is likely. *See Tootsie Roll*, 666 F. Supp. at 659. In this case, Cindy's claims include a breach of trust (Count 2). Under NRS § 164.715, "[a] trustee shall invest and manage the trust property solely in the interest of the beneficiaries." *Id.* If Cindy can establish that Chris is a trustee, she is a beneficiary, and the property was not managed solely in the interest of beneficiaries like her,[3] then she has a reasonable likelihood of prevailing on Count 2. For purposes of the relief requested, Cindy has demonstrated a reasonable probably of likelihood of success on the merits.

### B.   **Irreparable Injury**

It is in the irreparable harm prong of the analysis that Cindy's proffer fails. Cindy claims that she will suffer irreparable injury if injunctive relief is not issued because Chris is purportedly attempting to sell a "family owned party store locating in Lansing, Michigan," for which Chris has already "accepted an offer to purchase," without regard to whether he has received the best possible "price" for the subject property. Doc. 11-2 at 2-3; 4 at 4-5. "An injunction will not issue if the person or entity seeking injunctive relief shows a mere possibility of some remote future injury, or a conjectural or hypothetical injury." *Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011). Cindy's allegations and thin evidence fail to bring her claim from the "conjectural" or "hypothetical," such that extraordinary relief is warranted, because she has not produced the

---

[3] The Court notes that the Complaint is silent as to what role, if any, is played by any another trustee, although according to Christy Chris is a "Co-Trustee." *See* Doc. 1 at 3.

4

trust document demonstrating her status as a beneficiary who might be entitled to payment from the sale of the assets in question. Indeed, she does not explicitly indicate that the Lansing, Michigan property is actually a trust asset. Instead, she states only that "The Edward and Elaine Jaye Trust own a number of properties in the State of Michigan and the State of Nevada," and that Chris "is attempting to sell certain properties and borrow against certain properties without regard to whether it is in the best interest of the trust and its beneficiaries." Doc. 11-2 at 2. And she only impliedly speculates that the price he has requested for the deal (undisclosed in the briefings) is inadequate. Thus, Cindy has not shown that Chris' impending sale of the Family Store will result in injury.

Even assuming *arguendo* that Cindy had demonstrated that the Family Store is trust property, this injury alleged by Cindy is not irreparable. Injunctive relief is properly granted for real property when it is the loss of the uniqueness of the property that the plaintiff seeks to avoid. *See Sundance Land Corp. v. Community First Federal Savings and Loan Ass'n*, 840 F.2d 653, 661 (9th Cir. 1988). Cindy does not claim irreparable injury due to loss of the *property*, but rather to Chris' failure to secure the best sale *price* of the property. Doc. 11-2 at 2-3; 4 at 4-5. Mere monetary harm "will not usually support injunctive relief," *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057 (9th Cir. 2009), because "[s]uch injury can be remedied by a damage award." *Rent-A-Center v. Canyon Televison and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Thus, Cindy has not demonstrated a risk of "irreparable" harm from this alleged sale.

Nor do her allegations that Chris has gambled away trust assets justify injunctive relief here. True, Cindy's filings do establish that Chris has spent a considerable amount of money gambling and that the trust corpus has been depleted to $200. *See* Docs. 1 at 10, 1-4 at 1-73, 4 at 3. And where injury is alleged to arise from dissipation of assets, the movant can obtain an injunction preventing further spending—but must show that absent relief it is likely that assets will be dissipated, or other recovery of monetary damages will be unlikely. *See, e.g.*, *Connecticut General Life Insurance Co. v. New Images of Beverly Hills*, 321 F.3d 878, 881 (9th Cir. 2003); *Johnson v. Courturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). But

Cindy fails to show that Chris does not have an alternative source of income that could be used to remedy any further loss to the trust, such that recovery of monetary damages is *unlikely*. And as she acknowledges that at the time she initiated this action, whatever trust corpus once existed had already dwindled down to a mere $200, it appears that her effort comes too late for an anti-dissipation injunction to have any material effect.

In sum, Cindy has not demonstrated that, absent injunctive relief, she will suffer irreparable harm.

**C.    Adequacy of Legal Remedies**

In her threadbare three-page motion, Cindy never addresses the last three prongs of the standard, but a brief analysis of them reveals that they weigh against injunctive relief. First, Cindy cannot show that remedies available at *law* are inadequate in this case, particularly in light of the fact that she seeks to freeze assets that have already been disposed of. The arguments in her motions make it clear that her concerns are entirely monetary ones, which may be remedied with a damages award. *See Rent-A-Center*, 944 F.2d at 603.

Moreover, it appears that this family is already taking advantage of their adequate remedies in Nevada State court. Attached to Cindy's Complaint is the Declaration of Karen Jaye, Cindy's sister, prepared for and submitted in guardianship proceedings concerning her mother. *See* Doc. 1-3 at 2-5. She also attaches Karen's August 9, 2013, petition to remove Chris as a guardian. Doc. 1-3 at 25-30.[4] The Court is concerned that the instant federal action (and this rush to procure a TRO and preliminary injunction) may be an attempted end run around those already pending state court proceedings in which those very same allegations and issues are under consideration, since the evidence Cindy offers in support of the instant motions is dated evidence created originally for those state court proceedings, the status of which Cindy fails to disclose.

---

[4] Cindy also attaches an Order from Nevada state court that specifies Chris' appointment as co-guardian with George Fisher on April 29, 2010. Doc. 1-3 at 21-23. Fisher also apparently submitted an Affidavit supporting the appointment of Karen as co-guardian, which Cindy has also attached. Doc. 1-3 at 38-40.

6

### D.  Balance of Hardships and Public Interest

Nor has Cindy made any showing that the "balance of public and private hardships" favors her; and all other factors equal, this Circuit finds that the public interest should be given greater weight. *See F.T.C. v. Affordable Media*, 179 F.3d 1228, 1236-37 (9th Cir. 1999) (finding that district court's preliminary injunction order freezing assets held in offshore trust for the benefit of participants in nationwide ponzi scheme, in light of potential dissipation of those assets, was "far from clearly erroneous.").

Finally, Cindy never shows why the "public interest" would be disserved by a favorable ruling, as she focuses exclusively on the impact to herself, a purported trust beneficiary.  The public has an interest in, *inter alia*, presuming the good faith of trust fiduciaries, particularly when—as here, there is a co-trustee whose actions have not been implicated and whose role and position in this dispute Cindy never reveals.  Cindy's broad requests for relief—which include "freezing" all spending from the trust regardless whether some spending may be prudent and despite her own acknowledgment that the trust corpus is less than $200—would contravene these objectives.  To entertain such requests for extraordinarily relief on the basis of such thin contentions would contravene at least one clear public interest.

### Conclusion

Accordingly, based upon the foregoing reasons and with good cause appearing and no reason for delay,

It is **HEREBY ORDERED** that Plaintiff's Motion for Temporary Restraining Order [Doc. 11] is **DENIED**.

It is **FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction [Doc. 3] is **DENIED**.

DATED: January 16, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE